James Fair on behalf of the Crocker plaintiffs and Airmen First Class Byron Starks. This court today has the opportunity to underscore the importance of religious liberty for service members. This was a challenge of seven Air Force service members who challenged the religious accommodation process in the Department of the Air Force, a process that rejected 99 percent of religious accommodation requests with summary form letter denials. The seven plaintiffs in this case put forth religious accommodation requests to the COVID vaccine. Each and every one of them was denied. They were then threatened with involuntary separation. Subsequent to that, Airmen First Class Starks was involuntarily separated from the Air Force. The question before the court is the question of mootness, but if the court can grant any effectual relief, the case is not moot. And the court can grant effectual relief in three ways. First, it can address the improper separation and discharge. I'll wait a moment, Your Honor. You'll have to proceed despite my coughs. It's not anything you said, by the way. First of all— Repeat the first one. Yes, sir. The first way in which the court can grant effectual relief is by addressing the improper separation and characterization of Airmen First Class Starks. The second way that it can is by remanding to the district court to consider the broader vaccination policy religious accommodation system implemented by the Department of the Air Force. And the third way that it can grant effectual relief is by addressing the collateral consequences, such as Airmen First Class Stark's nonhonorable discharge, which has led him to not be able to receive the GI Bill and continue with his life. Of course, an important question for us is how much of this is foreclosed by Navy SEALs, but you'll be getting to that. Well, Your Honor, obviously this court made a very important decision in the Navy SEALs case, and that's to my second point. I'm happy to jump right into that. Well, I mean, so I think I was on the original panel in the Navy SEALs case with respect to religious accommodation, where I think it's fair to say we were extremely skeptical about the religious accommodation process. I believe the Supreme Court stayed what we did. And then I wrote the subsequent one, finding moot, the preliminary injunction. So it would be helpful to me if you could draw distinctions. Obviously, that's binding precedent. Yes, Your Honor. Between those cases, between what the Air Force is doing, what the Navy was doing, what are the collateral consequences in this case versus the collateral consequences in the Navy case, just whatever distinctions you think there are. Yes, Your Honor. Well, so this court obviously heard the preliminary injunction and found that that was moot. It then sent it back to the district court to assess whether the overall case was moot. In the Northern District of Texas, the judge determined that the overall case was not moot because the challenge in the complaint, the Navy SEALs complaint, was about the broader vaccination policy system. It wasn't just about the COVID-19 vaccine mandate. So he allowed them to proceed. And what ultimately happened in that case is the government and plaintiffs agreed to a class settlement in which the government agreed to eight additional steps that it could take, from removing adverse personnel records, removing adverse discharge records, remediating discrimination by putting out notices about how the Navy cares about religious accommodation, and by changing their religious accommodation process broadly. The Department of the Air Force, in our complaint, makes the same allegations. I think very highly of Heather Hacker and Mike Berry, and I looked at their complaint carefully when I drafted this one, and it's extremely similar. It also addresses the broader vaccine mandate, religious accommodation process that applies for any vaccine in the Air Force. Now, you say when we remanded in Navy SEALs, there was a settlement and it involved, you say, additional actions taken by that branch. Has the Air Force not done anything comparable to that? We don't believe that they have, Your Honor. We don't believe that the Air Force has done the things that were agreed to in that case. So the nine issues that were addressed there were removing adverse information from personnel records. That means removing negative flags that a follow-on promotion board could see in somebody's record. The Air Force says that they've removed those flags, but there's still potentially indications in the service record that those flags were there. Correcting the discharge records. In this case, Airman Petro's class's discharge shows that he was separated at a less-than-honorable discharge and separated, and that affects him going forward in life as a collateral consequence. Policy amendments were agreed to by the Navy that selection board convening orders would include language saying that this could not be considered for promotion. We don't believe there's any indication that the Air Force has done that. And amending the policy allowing resubmission if there's a change of circumstances. In this case, we alleged that the Air Force summarily rejected over 99% of these requests without following their policies, which are DOD Instruction 1300.17 that says you have to make individualized determinations. And so the district court here could certainly require and enjoin the military from not following DOD Instruction 1300.17. And for that reason, we do believe there's still effectual relief on those broader The district court determined that Airman First Class Starks did not have standing to pursue his case because he'd been separated. The district court's opinion in the Shelsky v. Austin case in the Northern District of Texas was directly the opposite. In that case, several Army service members brought a challenge. The court ultimately determined that the overall challenge was moot, but the challenge for the plaintiff that had been separated was not moot. That plaintiff was separated under grounds of serious misconduct for refusing to take the COVID vaccine. Now, in this case, it's a little different because there was a factual dispute about why Airman First Class Starks was separated, but the district court didn't consider the facts that were put forward by our side while considering and considering extrinsic facts that were put forward by the other side. So the district court, you'll see in their opinion, cites to Note 1 of Record Document 30, which is the government's assertion of why Airman First Class Starks was separated. So there were disputed factual issues there that deserved consideration. Especially considering the mysterious circumstances of his separation in violation of the Air Force Separation Manual. He had been in the service for more than six months, and so he had been in for nine months. His separation should have been honorable under the mandates of the Air Force Separation Manual. And his immediate command said he should be separated and honorable. He wasn't separated and honorable. Remind me, on what ground, though, did the district court reject Starks' separation? Was it different from the other plaintiffs? Correct. So under Iqbal, under Twombly, we think certainly a court could infer that the wrongdoing we alleged permitted that to be developed. And unfortunately, we didn't. So Starks would not be on the pleading stage? Correct. So there's been no discovery. So this is similar to the FBI v. Fecre case. It's similar to the Foster v. Warden case that you wrote, Judge Southwick. This has not been factually developed. We sought to develop it factually, and the court ruled against us on the motion to dismiss. So the case was dismissed. You mentioned this at the outset, but where in the complaint did you allege or complain about the Air Force's broader religious accommodation process? Your Honor, the complaint addressed in Record on Appeal 228 and 242 talks about the upcoming separation. And I would just broadly, our briefing points out, and I can find the part of the briefing, but the similarities between this complaint and the Navy SEALs complaint where the Northern District of Texas found that it was alleged. But there's a portion there in the Religious Freedom Restoration Act in the complaint that talks about kind of these broader vaccine policies being a problem. And it refers to them as defendants' vaccine policies. It doesn't refer to them as the COVID-19 vaccine policies. All of these service members are still subject to this system. And so that's why we think this case is similar to FBI v. Fecre, the no-fly list case. In that case, Mr. Fecre alleged that he was put on the no-fly list for constitutionally impermissible reasons, including his religion. The FBI ended up removing him from the no-fly list. And they put a declaration into the court saying there's no reason to believe he'll be put back on it. And the question was mootness. A unanimous Supreme Court said it's not moot because he's challenging this broader no-fly list system, not just whether he's on it at a given time. And, of course, he could be put back on it. And there's nothing to assure the court that the complaint of what he alleges is not going to happen in the future. We think this case is very similar. The court didn't specifically say that it made its decision in Fecre because of religion. But certainly, that raises questions. And under the Religious Freedom Restoration Act, individuals have an opportunity to bring their cases before federal courts. That was another issue we took issue with the district court, which is the application of the Mendez abstention doctrine instead of the Religious Freedom Restoration Act. And we believe that the text, history, and structure of the Religious Freedom Restoration Act shows that it should supersede Mendez, a judge-made abstention doctrine. So back to your three points where you say that there's still things left to do, I guess. Improper separation with respect to Mr. Starks. The third one was address collateral consequences with respect to Mr. Stark. It's Stark, right? Not Starks? Starks. Sorry. Number two was remand to consider the religious accommodation system. I guess what I'm getting at is, are your ideas, arguments about what's left to do, do they pertain only to Starks or do they pertain to all of the plaintiffs? They pertain to all the plaintiffs. Okay. How so? So that second point, all of these service members besides Starks are still in the Air Force. They're still subject to how the Air Force is going to apply its religious accommodation process. This exercise revealed that it was applying it in a sham process where 99 percent, as we alleged, were rejected. Is that something for the future, though? Not with respect to Starks who's been separated, but with respect to the others? Meaning if they come under it in the future, will we worry about it then? Well, so that's a good question, right, Your Honor? And this Court, of course, has to determine if this is between mootness and ripeness, right? The reason we don't think it is ripe, or excuse me, a ripeness issue where they could just bring another complaint, all of these plaintiffs are still subject to this system. They're still, they've all indicated through this process that they're not going to take certain types of vaccines that are made in ways that they find to be unethical and against their religious convictions. And they're still subject to potential vaccines, and there are several vaccines that would be implicated by their religious beliefs. And so similar to... So, well, so in the Navy SEALS case, as you know, that Congress passed a law, the Inhofe law, that took away the COVID vaccine. So, I mean, we said that's, so that's gone. And I thought, at least I thought I was pretty specific in the opinion saying, and they've said all collateral consequences of it have to go. But you're not, are you not talking about that? You're talking about something else. Well, I would say that we still have some collateral consequences that we've alleged. We've alleged discrimination against these religious service members that could be faced as they, you know, process religious accommodation requests going forward, just like FBI v. FICRE, where he's still subject to this broader system. And, you know, the case deserved development. You know, and obviously, in the Northern District of Texas, they found that there was indeed more to go forward, and that the case was... FICRE is Northern District of Texas? No, FICRE was the FBI no-fly list case. Where is that? Sorry, I don't remember. What court? That was, it went out through the Ninth Circuit and was the Supreme Court. Okay, I see. I see. That's right. But in both of the cases where mootness was not found, so in the Northern District of Texas case, mootness, they said there were broader issues that were raised and deserved consideration. The government then agreed to this class settlement, which is fairly generous and agrees to quite a bit more than what they're agreeing to in this case. And then we've got Shelsky, and in that case, the separated service member was allowed to proceed. His case ultimately went to an agreed order, and his characterization of discharge was upgraded. So the idea that there's nothing that can be done here and that the government has done everything it can and that there's no problem is belied by their own agreements in these other cases, and there's no principled reason to treat these Air Force service members different than the Army or the Navy, despite our preference for certain branches. The eight additional steps that, I guess it was the Navy, agreed to in the other case related to their vaccination policy or, I guess, their religious accommodation process generally? Yes, Your Honor. So the steps were remove any adverse, well, so some of it was related to the COVID, right? Remove any adverse information from personnel records. That was COVID-19. Amend its policy, though, prohibiting members from resubmitting requests. That's broadly, and that's every time. So they weren't allowing members, they're not allowing members to resubmit requests when circumstances change. Remember, the key to our complaint is that they weren't considering individual circumstances. So Faith Crocker and all these service members had immediate chains of command that were like, we love them, we want them to stay in, we don't want to separate them. At the highest levels, they were just summarily rejecting via form letters and saying, we don't, you know, we don't care about your individual circumstances. That's the number one injury here that continues, and the Department of Defense should not be permitted to operate a religious accommodation system where they're just not considering individual situations because that's in direct violation of DOD Instruction 1300.17. So several of those remedial measures were related to COVID, but some were broader. So they also agreed to essentially preventative measures against future discrimination. Publicly post-statement reaffirming the value of religious expression. Inform service members of their rights to request accommodations. Again, we allege discrimination and peers asking questions. I'm like, why are you doing this? And punishment for people even putting requests in. So this remedied that in the Navy case. Make available PowerPoint presentations for training leaders on how to apply this system and apply it properly. And then, of course, pay generous attorney's fees in that case, which obviously is a separate issue. But there were clearly issues here that were that were broader and that address the broader issues. And there's redress ability and there's additional steps that the Department of the Air Force can do in this case. May it please the court. Sarah Clark for the United States. The military rescinded its COVID-19 vaccination requirement a year and a half ago. Since then, it has gone above and beyond simply rescinding the mandate and has restored unvaccinated service members to full participation. There is no longer any effectual relief that this court or the district court could provide to these plaintiffs. And as a result, this case is moot. I want to start with this court's decision in Navy SEALs and also touch on the district court's decision in that case. So to start with, we have this court's decision in the P.I. posture. Obviously, here we have dismissal of the case as a whole, but the Navy SEALs decision is highly persuasive. It was confronted with the exact same DOD policies and materially identical Navy policies as we have here in the Air Force. And this court pointed out that those changes in policy had restored service members, had removed its ability to provide any meaningful prospective relief in that case in the form of an injunction to the plaintiffs there. And the exact same logic applies here, right? We have the same policies and the same type of request. So I think even now, plaintiffs, I think, would have to agree that there's no injunctive relief, for example, that this court could provide. And I just want to touch on the district court's decision. So plaintiffs are trying to make a lot of the fact that the district court then found that the case as a whole was not moot. But what the district court said was acknowledging that essentially every other case, basically the weight of authority, was in favor of mootness. The district court said, I've looked at those other cases. It says, I've closely studied the other cases. And this case, Navy SEALs, it says, unlike each of those other cases. And it specifically mentioned this case by name. So even on its face, setting aside, obviously, we don't concede the correctness of the district court's analysis. But even on its face, the district court didn't take these plaintiffs to be bringing some sort of broader challenge to the religious accommodation process that, at least in the district court's view, would be sufficient to maintain a case or controversy here. And I think you can see in plaintiff's complaint here that they did not bring that kind of sweeping challenge. They focused specifically on the COVID-19 vaccine. If they had challenged it more broadly, though, what's your argument that it's not moot? So if plaintiffs had brought a challenge to the religious accommodation process more broadly in their complaint, they still would have a problem in that they have not alleged that they are going to interact with this religious accommodation process. They don't have a concrete stake in challenging the religious accommodation process writ large. Because aside from sort of passing references that they may have concerns with other vaccines in the future, they haven't said, you know, I'm going to have an objection to another thing that the military is going to require me. I'm going to seek an exemption, and I'm going to be improperly denied it. And I will once again have the kind of grievance that they believe the process has involved. And did the plaintiffs make those allegations in the Northern District case? The district court certainly, I guess what I would say is the district court in that case concluded that those plaintiffs had that. That obviously also was a class-wide situation. What I'm hearing is that you would not necessarily agree that those challenges were made in the other case. You also don't think they were made in this case. The opposing counsel says he tried very much to mirror this complaint. So are you saying if this panel looks very closely at the complaint in this case and finds it comparable to a non-dispositive decision by the district court in the Navy SEALs case, that it is comparable to that? We're going to be faced with the same issue, it seems to me. In effect, though that's not really what we'll be doing, in effect deciding was the district court right to say that case was still alive on remand? And if it was, then it was the right to keep this case alive and remanded, I suppose, for further proceedings. What is the failure in the complaint here that should stop us from following a course similar to what the district court did in the other case? Two points, Your Honor. One, the complaint here does not challenge the accommodation process writ large. I think the portion of their complaint that they referred to basically just cites some of the, you know, quotes some of the policy language. But clearly the gravamen of the complaint is to take on the vaccination requirement and, you know, to the extent they've obviously interacted with the religious accommodation process. Well, am I reading too much in the way you made your previous statement? It seems to me you may believe this is also the case for the Navy SEALs complaint, that it doesn't do a very good job of making the broader arguments. Sure, but whether or not that's the case there, it certainly is the case. No, we only have one case before us. But nonetheless, I'm just saying are you going, you're basically saying that the Navy SEALs district judge was wrong. This court doesn't need to opine on that because whether it was right or wrong. I have just a question to help me in my analysis when I look at the Navy SEALs complaint. Does it also not talk about the religious accommodation? Does it talk about it in a different way that might justify what happened? Your Honor, I don't have the text of the complaint in front of me. Fair enough. So I don't want to opine on exactly what it said. What we have here is the complaint in this case. But before I get, I don't want to go too far down if that's not satisfying you. I just want to then return to I think what I was touching on in response to Judge Cornelius' question, which is also I believe responsive to yours, which is let's say we are satisfied that they did in their complaint take on the broader religious accommodation process. That doesn't help them now because I think we can agree that they did not bring any sort of concrete challenge or that they don't have a concrete stake in that accommodation process outside of the COVID-19 vaccination requirement because they've never even alleged that they will engage with this process again and be dissatisfied with the outcome. So absent some sort of concrete dispute between the parties about what they now claim to be challenging, the religious accommodation process writ large, there's no case or controversy to support this court's jurisdiction and to permit this court to opine on the religious accommodation process writ large. There needs to be a concrete dispute between the parties, and they certainly have not established that. Going through the additional relief that was granted by the district court settlement, if I understand it correctly, the list I was hearing was largely COVID-19 related. So it's not dependent upon the complaint being more broadly written than just COVID-19. Is it accurate to say that only man relief was granted in the COVID-19 vaccine as to COVID-19 issues? No, Your Honor, that's not accurate because what happened was the district court said this case is live. There may be some effectual relief I can grant. And then the parties settled. So, of course, the settlement between the parties, this mutual agreement, doesn't speak to sort of what the court could do. And it is not a grant of relief by the court. It's an agreement between the parties. Certainly a fair assessment. But however we should interpret it, it did deal with COVID-19 issues and granted relief related to COVID-19. That's correct, Your Honor. I think one sort of way that that played out in that case, I just want to flag a difference, is because there, you know, we have this class setting. And there was a sort of dynamic of, you know, people who were separated specifically because of the COVID-19 vaccination requirement, how their records might be corrected in the future. So I think that's one thing that plaintiffs pointed to here, that if you had been separated because of the COVID-19 vaccination requirement, the Navy agreed to wipe out references to misconduct. I mean, that kind of relief isn't, frankly, relevant to the plaintiffs here. And that does bring me briefly to Plaintiff Starks, right? So I think what plaintiffs are trying to say today is that Starks was concerned that he was going to be discharged, and he was, and therefore this is all of a piece. But Starks joined the complaint, the complaint that said, you know, we object to the vaccine requirement. We think that we're going to get separated for refusing the vaccine. That's what he has an issue with. That's what the complaint has an issue with. Starks was then separated for a completely unrelated health reason, right? The Air Force discovered that he had a disqualifying health condition and that he was not physically, medically fit to serve in the Air Force. So this is not the kind of consequence that Starks was concerned about or that the complaint takes on. Is that a contested factual matter? It's true that now Starks argues that that was a pretext and that they were discharging him because of his refusal. Obviously, the military's position is that he is not medically fit to serve. But if it's contested, I mean, at this stage, aren't we supposed to assume the plaintiff is correct? Well, it's certainly not in the complaint, right? There's no allegation at all about this in the complaint. So I don't think there's any allegation to assume is correct. These are legal arguments that they're making now in briefing. And I guess that would just bring me sort of to the nature of Starks's sort of new claim. And I just want to highlight how different it is from what we have in the complaint. Right. The complaint challenges the COVID-19 vaccination requirement, asks for injunctive and declaratory relief as to the vaccination requirement. Now, Stark says, you say I'm not medically fit to serve. I think I am. That's a factual medical dispute that, for one, the military is particularly expert in. And two, is not the kind of rift or a balancing dispute that the complaint sort of would have called on a court to adjudicate. Right. So this is not the sort of strict scrutiny analysis. This is a factual question about whether his lung issues, which he acknowledges that he experienced on several occasions while he was in the military, were sufficient to warrant his discharge for erroneous enlistment. And of course, there are military boards that are set up to address and to adjudicate those kinds of. Did his separation occur after the complaint was filed in this case? So the timing is a little bit messy. He was experiencing these lung issues in April and May of 2022. I believe the doctor first recommended his discharge for his diagnosis in May before he joined the complaint. He then joined the complaint at the end of May and then the discharge then went through in June. So they were happening at the same time. Of course, they were happening the same time as he was experiencing these symptoms and getting this diagnosis from the doctors at the Air Force. But I guess what I'm getting at is we have the district court dismissed his claim. Right. Was it on standing or mootness? It was on standing. So there the district court had put the other plaintiff's claims on ice because of the Dostar decision. It was addressing only Stark and it first ruled through the lens of standing that Starks no longer had a concrete stake in the dispute, in the dispute being his challenge to the COVID-19 vaccination requirement because he had been separated for an unrelated reason. So the district court viewed that through the lens of standing. I think it would be appropriate to view it through standing or mootness because it's an issue of concrete injury. That's before us, though. Right. Their appeal of that is before us. So we have to look at the factual record that supports whether that was correct. Right. I guess to clarify. So the question of whether there is a live case or controversy between Starks and the defendants. You know, that's a question that I think could be. The conclusion of mootness or lack of standing could be reached, I think, on multiple different grounds. I think the issue that he had in district court that the district court pointed to continues to persist. Obviously, now we have the rescission of the vaccination requirement, providing an additional basis to conclude that he lacks a concrete stake. The reason I ask about, of course, is that he is differently situated than the other plaintiffs because of his separation. I understand you. You're the district court says. And you're saying, well, it's for COVID, not not COVID related different reason, which which should, in your view, affect his his claim. Right. Lack standing or it's moot. Sure. So so I think what I would say is the outcome is same is the same for all seven plaintiffs. It is true that he is in a slightly different factual situation. It doesn't change the bottom line in terms of his lack of stake. Yeah. I mean, you're if you're right and I'm not saying you're wrong. It's just for a different reason. Maybe the same outcome, but different reason. Right. You've separated for non COVID related independent reason. So therefore, you lack standing to contest the vaccine requirement or your challenge to the vaccine requirements. Sure. Yes, I think the court could treat him differently. I think the court could also treat him under the same kind of mootness umbrella related to the rescission. I think it's it's not necessarily the case that his slightly different factual circumstances take him outside of that realm. But the court could certainly say kind of echo the district court and say you lack standing. I want to go back briefly to a point that plaintiffs were making related to their argument that they brought a broader challenge and just touch on the Supreme Court's decision in Vickrey. So plaintiffs tried to frame that decision as one in which the Supreme Court said this isn't moot because you brought a broader challenge. But that's not what happened there. That was a decision about the voluntary cessation exception. The plaintiff there hadn't brought a sort of broader challenge that the that the Supreme Court said, actually, this can keep you going. It was simply a question of whether the voluntary cessation exception to mootness was satisfied. And the Supreme Court concluded that it was and that the case remained live. So there was no opining on this sort of broader structural challenge versus individual decision. That just wasn't an issue there. The court has no further questions. We'll rest on our briefs and ask that you refer. Thank you, Counsel. Your Honor, just a few brief points in the remaining time. Whether broader policies were raised in our reply brief on page seven, what those policies were, that our amended complaint raised the same issues to the military's application of the accommodation process as the Navy SEALs complained it. I feel very confident that if the court goes back and does a red line of those complaints, you're going to find that I borrowed heavily from those lawyers who are attorneys and that we made the same allegations about these broader issues of the Religious Freedom Restoration Act being violated that were raised in that case. But specifically, Record on Appeal 22, 28 through 33, 187 to 188, and 271 to 272 address those issues. Those are pages of your complaint? Yes, sir. Furthermore, the government said that the judge, the Northern District of Texas Navy SEALs opinion mentioned Crocker and distinguished Crocker. That is not accurate either. Pages 14 through 17 of the opinion talks about comparison with other military vaccine cases, and there's no discussion of the Crocker case. I think Judge Southwick has touched the issue. The government didn't really agree with the decision in the Northern District of Texas. They fought it aggressively. The court came to the conclusion the case was not moot and could proceed. And this complaint is, I would argue, indistinguishable, but the panel certainly can go back and look at those complaints. What's your response to the argument that the COVID-related additional actions that the Navy said they would take in that case wouldn't apply here? Because that was the Department of the Navy agreeing to that, Your Honor, not the Department of the Air Force. The Air Force has never stated that they've agreed to any of those additional remedial actions. They've said that they would go back and clean up adverse records. I give them that. But the rest of those actions they have not agreed to. And counsel for the government hasn't. That is relief that you're seeking here that this court could grant? So the relief request in this case is identical to the prayer for relief in the case, in the Navy SEALs case. And, again, the court simply can go back and compare, but it's identical. It talks about vaccine policies broadly. Defendants' vaccine policies is the specific quote, and those policies apply for all vaccines, not simply COVID-19. They've also argued that our First Amendment complaint doesn't raise any future issues. That's also inaccurate. Paragraph 134 of the First Amendment complaint says, Plaintiffs, prior to learning about the production or testing of the COVID-19 vaccines using aborted fetal cell lines, were unaware that such cell lines were used in the production or testing of any medications or vaccines. Plaintiffs, having learned that other medications may be tested or produced using those cell lines, have since committed to refuse to take any medication that's developed or tested. Now, this panel has significant military experience. Every time you go in for a PHA, I went in last week, there's a list of vaccines for people to take. So it's realistic to believe that these particular issues will arise again, potentially very soon, for the plaintiffs. And for the same reason as VCRA, this is still an issue for these plaintiffs. I wanted to touch briefly on collateral consequences. The Foster v. Warden opinion, I think, is excellent on this point. It's directly about VA benefits. And the deprivation of VA benefits is a significant lifelong collateral consequence. The VA benefit that Airman First Class Starks has lost is the GI Bill. That's the most generous benefit given in the military. And after a certain amount of period of time in the military, a service member is entitled to that. The briefing on the motion to dismiss on Starks points out that the Air Force separation manual was ignored in this case and an honorable discharge was required when somebody's been in the service for more than six months. That issue does seem to me problematic, and there are, as opposing counsel points out, processes for correction of military records, for appealing discharge issues, promotions, other matters. There's not something that we usually get into. Navy SEALs address that. You've got any particular reason why we should be dealing with complaints about a discharge, that there are processes within the branch to deal with those? Yes, Your Honor. The argument is that administrative exhaustion, because this allegation is related to religion, is not required. Now, courts have looked at whether or not discharges were proper. I've got a series of Supreme Court cases. Harmon v. Brooker looked at whether the Secretary of the Army exceeded his authority. There was a case that I think is directly on point, which is the Gay Veterans Association v. the Secretary of Defense. It was a case from the 80s where a service member was separated from the service under erroneous enlistment that was arguably related to his homosexuality, and the court said that the discharge he received should have been upgraded to an honorable discharge. I agree with the court that the situation is a little different for training and promotion than for characterization of discharge. Those matters, obviously, are more closely related to the essence of military order and discipline. However, the discharge upgrades, courts have addressed those before. And that case is 668F sub 11. Harmon v. Brooker is 355US579, and Kennedy v. Secretary of the Navy is 401F2D990. So I request that the court would remain to the district court. The arguments from each of you have been most helpful. I'm glad we had the argument on this case. That concludes our arguments for today. We are in recess until tomorrow at 9 a.m.